# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CIT BANK, N.A., | No. 57254-1-II |
| Plaintiff below, | |
| v. | |
| JOHN SCANNELL, in his capacity as the Administrator of the Estate of Charles Chiofar aka Charles R. Chiofar; WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES; a government entity; and all other persons, parties, or occupants unknown claiming any legal or equitable right, title, estate, lien, or interest in the real property described in the complaint herein, adverse to Plaintiff's title, or any cloud on Plaintiff's title to the Property, collectively designated as DOES 1 through 50, inclusive, | UNPUBLISHED OPINION |
| Appellant, | |
| BRECKENRIDGE PROPERTY FUND 2016, LLC, | |
| Respondent. | |

CRUSER, A.C.J. — In 2016, Cit Bank, NA (Cit Bank) attempted to foreclose on a deed of trust issued to Charles Chiofar. Chiofar passed away in 2017, and John Scannell was eventually named as a defendant in the foreclosure action in his capacity as personal representative of the Estate of Charles Chiofar (Estate). The subject property was later sold at a sheriff's sale to Breckenridge Property Fund 2016, LLC (Breckenridge). Scannell appeals the trial court's order

denying his motion to intervene in the action in his individual capacity and the order granting Breckenridge's motion to confirm the right to possession and issuing a writ of assistance.

Because Scannell is not acting solely on his own behalf in this litigation concerning his own legal rights, we hold that it is improper for Scannell to appear pro se when named as a defendant in his capacity as the personal representative of the Estate. Accordingly, we affirm the orders on appeal.

FACTS

In March 2016, Cit Bank initiated a foreclosure action against Charles Chiofar, alleging that Chiofar had an outstanding balance due on a deed of trust for his property located in Tacoma, Washington. A year later, in March 2017, Cit Bank sought and obtained an order of default and default judgment against Chiofar, claiming that Chiofar failed to appear or respond to the complaint after being served by publication in January 2017. The trial court also entered an order of sale for the property with the proceeds to be applied to the outstanding balance on the deed of trust. Unfortunately, Chiofar had passed away on January 9, 2017, two days before the service by publication began circulating.

In October 2018, Scannell filed a motion under CR 60 to set aside the default order and judgment and the order of sale on the basis that the Estate was never notified about the lawsuit. At the hearing on this motion, the commissioner asked Scannell whether he was able to appear on behalf of the Estate when he was not an attorney and indicated that the probate statute did not specify whether the personal representative needed to have an attorney representing the estate. After stating that there was "no question" that a personal representative can be named in an action

involving an estate, rather than naming the estate itself, the commissioner decided to proceed with Scannell appearing pro se. Clerk's Papers (CP) at 300.

The commissioner ultimately denied Scannell's motion, and Scannell sought revision of the commissioner's ruling. The trial court granted Scannell's motion for revision and vacated the default judgment and order as well as the order of sale. The record does not contain a transcript of the hearing on this motion, assuming a hearing was held, and the court's order does not mention Scannell appearing pro se.

Cit Bank then filed an amended complaint that named Scannell as a defendant "in his capacity as the Administrator of the Estate of Charles Chiofar." *Id.* at 77. Several months later, Cit Bank filed a motion for summary judgment, arguing that Chiofar defaulted on the promissory note and deed of trust prior to his death and that the Estate had not been maintaining the property. The record does not contain a response by Scannell. Cit Bank's motion was granted, and the trial court entered a judgment and decree of foreclosure. An order directing the Pierce County Sheriff to sell the property was entered in March 2021. The sheriff's sale took place on May 14, 2021, and Breckenridge was the highest bidder at $340,001.00. The trial court entered an order confirming the sale on June 11, 2021.

In June 2022, Breckenridge filed a motion to confirm its right to possession and for a writ of assistance. It appears that, around the same time, Breckenridge filed a motion to intervene, but that motion is not in our record. In support of its motion to confirm its right to possession, Breckenridge submitted a declaration by a manager claiming that he had inspected the exterior of the property shortly before the sheriff's sale and that the property had been vacant and

uninhabitable. After the eight-month redemption period under RCW 6.23.020(1)[1] had passed, Breckenridge obtained a sheriff's deed.

Scannell seemingly filed one response to both of Breckenridge's motions. He claimed that, for the prior two years, he and the Estate had been "occupying the building" and maintaining it for purposes of remodeling it so that it could be sold or rented. *Id.* at 253. According to Scannell, agents of Breckenridge had broken into the property in March 2022 and "ransack[ed] the building," removing Scannell's personal possessions that he had on the property. *Id.* Scannell also included a paragraph stating that he "denie[d] the sale of the property was valid" because "[h]e had more than one basis to object to the confirmation, such as the size of judgment and the sale took place during a pandemic," and because he had never been given notice of the return of sheriff's sale, the motion to confirm the sale, or the order confirming the sale. *Id.* at 256.

Scannell also apparently filed a motion to intervene in his individual capacity in June 2022. This motion does not appear in our record. The trial court denied the motion after finding "that John Scannell does not have an individual interest in the subject property, he is not a beneficiary of the Estate of Chiofar, and he does not have standing to intervene." *Id.* at 278. The trial court granted Breckenridge's motion to intervene and its motion to confirm the right to possession and for a writ of assistance.

Scannell appeals the court's order granting Breckenridge's motion to confirm the right to possession and issuing a writ of assistance and the order denying Scannell's motion to intervene in his individual capacity.

---

[1] RCW 6.23.020(1) provides that "the judgment debtor or any redemptioner may redeem the property from the purchaser at any time [ ] within eight months after the date of the sale if the sale is pursuant to judgment and decree of foreclosure."

DISCUSSION

A. SCANNELL'S MOTION TO INTERVENE

We must first address the trial court's order denying Scannell's motion to intervene in his individual capacity because his ability to appeal the order granting Breckenridge's motion to confirm the right to possession and to issue a writ of assistance depends on our resolution of the issue of Scannell's appearance in this case.

Neither party directly addresses the trial court's order denying Scannell's motion to intervene in his individual capacity, in which the court found that Scannell did not have an individual interest in the property, was not a beneficiary of the Estate, and did not have standing to intervene. Scannell assigns error to the trial court's finding that he did not have an individual interest in the litigation, but he does not provide any argument on the issue other than asserting that Breckenridge "terminated his occupancy of the building and converted approximately $50,000 of his personal property into their own possession as a result of their unlawful break-in." Br. of Appellant at 20.

Assuming Scannell's "occupancy of the building" refers to his alleged maintenance of the property, this was being completed in his capacity as the personal representative. And assuming the personal possessions that Scannell alleges were removed by Breckenridge were personal possessions that Scannell left at the property during this maintenance, this does not establish standing to challenge the sale of the property to Breckenridge; it merely establishes a separate claim against Breckenridge for the recovery of these personal possessions. Therefore, we affirm the trial court's order denying Scannell's motion to intervene in his individual capacity.

B. SCANNELL'S STANDING

Next, in order to determine whether Scannell can properly challenge the trial court's order granting Breckenridge's motion to confirm the right to possession and issuing a writ of assistance, we must address whether it is proper for Scannell to appear pro se in this litigation where he is appearing on behalf of the Estate. Throughout the proceedings below, and before this court, Scannell has appeared pro se. He is listed as a defendant in the amended complaint, but he is listed in his capacity as the personal representative of the Estate.

Washington law generally requires individuals appearing before the court on behalf of another party to be licensed to practice law. *No On I-502 v. Wash. NORML*, 193 Wn. App. 368, 372-73, 372 P.3d 160 (2016).

> There is a recognized "pro se exception" to these general rules where a person " 'may appear and act in any court as his own attorney without threat of sanction for unauthorized practice.' " But this pro se exception is limited, applying "only if the layperson is acting *solely on his own behalf* with respect to his own legal rights and obligations."

*Id.* at 373 (internal citations omitted) (internal quotation marks omitted) (quoting *Cottringer v. Emp't Sec. Dep't*, 162 Wn. App. 782, 787-88, 257 P.3d 667 (2011)). As noted by the parties, we have previously held that the pro se exception did not allow a personal representative to litigate pro se when representing an estate because they were not representing their own interests in the litigation. *Bozgoz v. Essakhi*, No. 50381-6-II, slip op. at 4-5 (Wash. Ct. App. May 15, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050381-6-II%20Unpublished%20Opinion.pdf.

In *No On I-502*, the plaintiff was an individual suing on behalf of an organization that opposed a voter initiative. 193 Wn. App. at 370. The defendants moved to dismiss the lawsuit

against them on the basis that the plaintiff could not maintain the lawsuit as a pro se litigant because "citizen's actions" under the Fair Campaign Practices Act were required by statute to be filed in the name of the State. *Id.* We affirmed the trial court's dismissal of the lawsuit, reasoning that, under the statute, "[t]he person has a right to sue if certain criteria are met, but the underlying claim always belongs to the State." *Id.* at 373. Because the claim and any judgment award belonged to the State, the plaintiff was not acting solely on his own behalf concerning his own legal rights and obligations. *Id.*

Scannell attempts to distinguish the principles outlined in *No On I-502* by arguing that RCW 11.48.010 authorizes personal representatives to maintain actions in their own name in order to settle the estate, whereas the statute at issue in *No On I-502* provides that the action must be brought in the name of the State. Although Scannell claims that the reasoning from *No On I-502* is inapposite here because he has a duty to settle the estate and may do so in his own name, the statute only grants that power to individuals in their capacity as the personal representative. *See* RCW 11.48.010 ("The personal representative shall be authorized in his or her own name to maintain and prosecute such actions as pertain to the management and settlement of the estate."). Therefore, claims on behalf of the State under the relevant statute in *No On I-502* are analogous to claims brought by a personal representative on behalf of an estate in this case. In neither situation is the pro se litigant acting solely on his own behalf.

Scannell is not acting solely on his own behalf in this litigation because he is named as a party in his capacity as the personal representative of the Estate, and the litigation does not concern his own legal rights and obligations. Accordingly, it is improper for Scannell to appear pro se in this capacity.

Scannell appears to argue that collateral estoppel, res judicata, and/or the law of the case doctrine bar relitigation of the issue of his pro se status because the trial court permitted him to argue his motion to set aside the default order and judgment and order of sale when "[t]he issue of John Scannell not being an attorney was raised at the hearing." Br. of Appellant at 7-8. Scannell conflates the three doctrines of collateral estoppel, res judicata, and the law of the case, as these doctrines are frequently confused with one another. *See Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 54, 366 P.3d 1246 (2015). Whereas collateral estoppel "bars relitigation of an issue in a subsequent proceeding involving the same parties," res judicata bars relitigation of the same cause of action, rather than the underlying issues. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). On the other hand, under the law of the case doctrine, issues decided by an appellate court become the law of the case in subsequent proceedings. *Lodis*, 192 Wn. App. at 54.

Scannell has not shown why any of the three doctrines would prevent this court from ruling on the issue of whether he can represent the Estate pro se as the personal representative. The closest doctrine that may apply would be collateral estoppel, which requires the party seeking application of the doctrine to establish:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen*, 152 Wn.2d at 307. The issue of Scannell's representation was merely raised by the commissioner at the hearing on Scannell's motion to vacate the default order and judgment and order of sale; there was no order in which the court ruled that Scannell had the authority to proceed

pro se. Even if there was an order memorializing this type of ruling, Breckenridge was not a party at the time the issue was raised, and it would be an injustice to Breckenridge to apply the doctrine here, where "permitting [Scannell] to maintain this action without representation by a licensed attorney would amount to the unauthorized practice of law." *No On I-502*, 193 Wn. App. at 375-76.

We, therefore, affirm the trial court's order granting Breckenridge's motion to confirm the right to possession and issuing a writ of assistance because Scannell cannot properly challenge the order while appearing pro se in this litigation.

## CONCLUSION

We hold that it is improper for Scannell to appear pro se in this litigation, when he is named as a defendant in his capacity as the personal representative of the Estate. We affirm the orders on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

MAXA, J.

CHE, J.